795 So.2d 105 (2001)
William T. GILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3656.
District Court of Appeal of Florida, Fourth District.
August 1, 2001.
Rehearing Denied October 16, 2001.
*106 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
The Appellant, William Gilson, appeals his jury conviction and resulting sentence of 101.7 months for lewd and lascivious battery. On appeal, Gilson argues that the *107 trial court judge illegally assessed eighty points on the sentencing guideline scoresheet for victim injury upon a sua sponte finding of sexual penetration. At the crux of Gilson's appeal is the argument that because the jury never made a specific finding of penetration, penetration has not been proven beyond a reasonable doubt, therefore such a finding by the trial judge is a violation of due process. In support of this argument Gilson cites Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We disagree and therefore affirm.
The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination of sexual penetration authorizing an increase in victim injury points and a concomitant increase in prison term length, be made by a jury based on proof beyond a reasonable doubt.
This question is not unique among Florida appellate courts. In fact, most recently the Fifth District undertook examination of a case nearly identical to the one at bar. See McCloud v. State, 741 So.2d 512 (Fla. 5th DCA 1999) on rehearing en banc (hereinafter McCloud I). On similar facts, the McCloud I court held that a jury determination is not required for a court to find penetration. See id. at 514. Although we agree with the outcome of McCloud I, we write to clarify our decision in light of the United States Supreme Court's recent decision in McCloud v. Florida, 531 U.S. 1063, 121 S.Ct. 751, 148 L.Ed.2d 654 (2001)(hereinafter McCloud II), which vacated McCloud I and instructed the Fifth District to reconsider their decision in light of the Supreme Court's holding in Apprendi. See id.

I
In the instant case, the State charged Gilson, who was twenty-three years old, with lewd and lascivious battery on a fifteen-year-old girl (the "victim"). The evidence at trial showed that Gilson and the victim had been observed by Martin County Deputy Sheriff Garman ("Garman") in the back seat of a vehicle parked in a Palm City park after hours. More specifically, Garman testified that:
I moved toward the rear of the car ... and I observed a male and a female having sexual intercourse.... It was a gentleman on top of a female. She had her head tucked into his shoulder. They were in an act of sexual intercourse. His pants were down around the thigh area of his body and he was on top of her. Her legs were wrapped around his trunk area, and they were having sex... it was obvious that they were having sex.
Tr. at 111. Although unwavering in his belief that Gilson and the victim were engaged in sexual intercourse, Garman testified that he did not actually see Gilson penetrate the victim.
The victim testified that she was so intoxicated that she could not recall whether she and Gilson had engaged in sexual intercourse; however, she strongly doubted that they had. In turn, Gilson testified in his defense, and denied that he and the victim had engaged in intercourse.
Gilson was convicted, and during the sentencing hearing objected to the "victim injury" portion of the pre-sentence investigation scoresheet. Specifically, Gilson objected to a finding by the trial court judge that there was sexual penetration. This finding resulted in a forty-point increase in Gilson's score and concomitant increase in his ultimate sentence.
On appeal Gilson argues, in essential part, that the crime of lewd and lascivious battery requires proof of either "vaginal penetration by," or in the alternative, "union *108 with," the sexual organ of another. Because the jury was never asked to make a specific finding of penetration in this case, but merely returned a guilty verdict, penetration has not been proven beyond a reasonable doubt. Therefore, a finding of penetration by the trial court judge that increases Gilson's sentence is a violation of due process and inapposite to the clear holding in Apprendi. See Apprendi, 530 U.S. at 466, 120 S.Ct. 2348. We disagree.

II
It is appropriate to begin by examining the reasoning and underlying legal principles forming the basis for the United States Supreme Court's decision in Apprendi. See Apprendi, 530 U.S. at 476, 120 S.Ct. 2348.
In Apprendi the Court had before it a question of Constitutional importance regarding a New Jersey statute that provided a sentence enhancement for crimes predicated on racial prejudice. See Apprendi, 530 U.S. at 471, 120 S.Ct. 2348. The statute in question provided for an enhanced sentence after the conviction of any crime in which the trial court judge found, by a preponderance of the evidence, that the crime was motivated by racial bias. See id. The argument advanced in support of the statute was predicated upon the idea that the enhancement statute was a "sentencing factor," rather than an element of the underlying crime. Id. The Supreme Court rejected this characterization, and undertook a thorough analysis of the constitutional implications of sentence enhancing provisions. Id. at 472-77, 120 S.Ct. 2348. The Supreme Court's analysis clearly drew a distinction between statutes that provide sentence enhancement and sentencing factors. See id.
Our system of criminal law functions under the notion that the law threatens certain pains if we engage in unlawful conduct. See Apprendi, 530 U.S. at 475, 120 S.Ct. 2348. As a matter of simple justice we must obviously be safeguarded from unwarranted and unwarned of pains. See id. It is this concept, once observed by Oliver Wendell Holmes, Jr., that underpins our entire notion of due process of law. See id. at 476, 120 S.Ct. 2348.
Under the penumbra of the general idea of due process of law, fall those constitutional protections of surpassing importance, that we have memorialized in the Sixth and Fourteenth Amendments. Id. at 476-77, 120 S.Ct. 2348. Taken together these amendments ensure the accused that he shall have "a jury determination the [he/she] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Id. at 477, 120 S.Ct. 2348 (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)(alteration in original)). This essential element, the proof of every accusation beyond a reasonable doubt, is well grounded in the historical foundation of our country and our system of common law. Id.
This element dovetails with Holmes' notion, and results in the necessity that criminal proceedings must be
submitted to a jury after being initiated by an indictment containing "all the facts and circumstances which constitute the offence, ... stated with such certainty and precision that the defendant... may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly ... and that there may be no doubt as to the judgment which should be given, if the defendant be convicted."
Id. at 478, 120 S.Ct. 2348 (quoting J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)). Similarly, this predictability carries through to the pronouncement *109 of judgment. "The court must pronounce that judgment, which the law hath annexed to the crime. Id. (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)). Consequently, the notion of explicit judicial discretion was absent. Id. at 479, 120 S.Ct. 2348. "The substantive criminal law tended to be sanction-specific; it prescribed a particular sentence for each offense. The judge was meant simply to impose that sentence." Id. (quoting Langbein, the English Criminal Trial Jury on the Eve of the French Revolution, in the Trial Jury in England, France, Germany 1700-1900, pp. 36-37 (A. Schioppa ed.1987)).
So too, when a statute mandates a higher degree of punishment to a common-law felony if committed under particular circumstances, that higher degree of punishment must be expressly charged and proven to a constitutional threshold. Id. at 480, 120 S.Ct. 2348 (citing Archbold, Pleading and Evidence in Criminal Cases supra at 51). If the prosecutor proves the underlying crime, but fails to prove the particular circumstances under which the higher degree of punishment applies, the accused may not be convicted of anything but the lesser offense. Id. at 480-81, 120 S.Ct. 2348.
However, this is not to imply that it is impermissible for judges to exercise any discretion whatever. Id. at 481, 120 S.Ct. 2348. "Both before and since the American colonies became a nation, courts in this country and England practiced a policy under which a sentencing judge could exercise a wide discretion in ... determining the kind and extent of punishment to be imposed within limits fixed by law." Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)(emphasis added). This principle has always been bound by the notion that the judge's discretion is limited by the legislature. See Apprendi, 530 U.S. at 481, 120 S.Ct. 2348. A judge's task in sentencing is to determine, "within fixed statutory or constitutional limits[,] the type and extent of punishment after the issue of guilt has been resolved." Williams, 337 U.S. at 246, 69 S.Ct. 1079.
This framework ensures that facts which may potentially subject the accused to punishment in excess of that established by law for the offense must be submitted to the jury and proven to a constitutional certainty. See Apprendi, 530 U.S. at 482-83, 120 S.Ct. 2348. When an accused faces
punishment in excess of that provided by statute when an offense is committed under some circumstances but not others... it necessarily follows that the defendant should notat the moment the State is put to proof of those circumstances be deprived of protections that have until that point, unquestionably attached
Id. at 484, 120 S.Ct. 2348.
Even though it is true that the legislature has broad power to define the law and attach punishment to violations of it, it is not within its power to circumvent constitutional protections "merely by `redefin[ing] the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment.'" Id. at 485, 120 S.Ct. 2348 (quoting Mullaney v. Wilbur, 421 U.S. 684, 698, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). In other words, a state may not redefine the elements of murder to impart a presumption of murderous intent to the defendant, thereby requiring him to prove heat-ofpassion in order to avoid the higher charge of premeditated murder. See id.
In 1986, the United States Supreme Court undertook the examination of a Pennsylvania statute imposing mandatory minimum sentences. See id. Pennsylvania's act provided for the imposition of *110 minimum sentences in cases where a judge found "by a preponderance of evidence, that the person `visibly possessed a firearm' in the course of committing one of the specified felonies." Id. at 486, 120 S.Ct. 2348 (quoting McMillan v. Pennsylvania, 477 U.S. 79, 81-82, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). After careful analysis, the Court approvingly coined the term "sentencing factors" to refer to facts that could affect a defendant's sentence but need not necessarily be considered by the jury. The Court's opinion revolves around the narrowly defined distinction between factors which enhance criminal penalties beyond statutory limits and those that limit the judge's discretion in imposing sentences within statutorily defined limits. In rejecting the petitioner's claim that Pennsylvania has effectively defined a "new set of upgraded felonies," the McMillan Court reasoned that no penalty beyond the maximum already set for the underlying offense had been authorized. Id.
Of great interest is the McMillan Court's recognition that the statute "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." Id. at 87, 106 S.Ct. 2411.
In sum, the current state of the law as espoused in Apprendi may be summarized as follows:
Due Process requires that every element of the crime charged must be proved, to a jury, beyond a reasonable doubt. Included within this requirement is the necessity for a strictly defined and easily predictable sentence directly attached to the crime: The accused must be sufficiently apprized of the consequences of his act and ensured a review of these facts by a jury of his peers. Even though the prescribed sentence must be strictly defined, there may be a provision within the sentence for a maximum and a minimum bound within which the accused must be sentenced. It is unconstitutional for a legislature to remove from the jury the examination of any facts that increase the prescribed range of penalties to which the accused is exposed. Therefore, any fact which, if proved, allows the judge to exceed the maximum bound of the prescribed sentence, must be proved to a jury, to a constitutional sufficiency. However, any fact which, if proved, provides for a higher sentence within the prescribed bounds need not be proved to a jury to a constitutional certainty. Instead, these sentencing factors may be determined by the judge by a preponderance of the evidence. See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.

III
Having concluded this analysis, we can now turn to the case at bar and apply the facts to the rule of Apprendi. The statute with which Gilson was charged was section 800.04(4). Section 800.04(4) reads:
LEWD OR LASCIVIOUS BATERY. A person who:
(a) Engages in sexual activity with a person 12 years of age or older but less than 16 years of age; or
(b) Encourages, forces, or entices any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity
commits lewd or lascivious battery, a felony of the second degree, punishable as provided in s. 775.082, s. 775,083, or s. 775.084.
§ 800.04(4), Fla. Stat. (1999). Further, sexual activity is defined as:
the oral, anal, or vaginal penetration by, or union with, the sexual organs of another or the anal or vaginal penetration *111 of another by any other object; however, sexual activity does not include an act done for a bona fide medical purpose.
§ 800.04(1)(a), Fla. Stat. (1999).
Therefore, in order for a conviction to result the State must prove, beyond a reasonable doubt, that the accused engaged in either (1) oral, anal or vaginal penetration of the victim, (2) union with the victim's sexual organ, or (3) anal or vaginal penetration of the victim with any other object; and, that the victim was between the ages of twelve and sixteen. See § 800.04(1)(a), (4), Fla. Stat. (1999). If the State succeeded in proving these elements, the accused faced a maximum sentence of fifteen years in prison. See § 775.082(3)(c) Fla. Stat. (1999).
The verdict the jury returned in this case finds only that the Defendant was guilty of lewd and lascivious battery. Therefore, the Defendant's argument that it is impossible to determine that the jury found beyond a reasonable doubt that there was penetration is correct. This is not, however, dispositive to the State.
Under section 775.082, the Defendant could have been sentenced to fifteen years in prison. See § 775.082 Fla. Stat. (1999). He was instead, based in part upon the scoresheet included in the pre-sentence investigation, sentenced to a term of imprisonment of 101.7 months: slightly more than eight years.
Although penetration is one alternative element of the crime of lewd and lascivious battery, which if charged must be proved beyond a reasonable doubt, it has not been utilized to depart from the maximum sentence allowed by law for the crime for which Gilson was convicted. Instead, it is merely a "sentencing factor" that the judge considered in his broad discretion to sentence, "within the range prescribed by statute." Apprendi 530 U.S. at 481, 120 S.Ct. 2348.
During the sentencing hearing, the trial court judge made the following statement
Okay. My recollection of the testimony was that he was positive that they were having sex. He was subject to extensive cross examination on the subject, be he never, to my mind, backed down on theon the statement that what he observed was sexual intercourse taking place there, which would be penetration. So over the objection of the defense I will leave the scoresheet as is.
Tr. at 358-59. This statement evidences the trial court judge's belief that, to his mind, it is more likely than not that penetration had occurred. This finding is well supported by the explicit and thorough testimony of Deputy Garman.
After extensive review of this case we find that the record evidence supports the trial court's factual finding. Additionally, viewing the evidence through the prism of Apprendi, we find that there was no error in the trial court's assessment of eighty points where the trial judge made a finding that, by the preponderance of the evidence, penetration had occurred. See Apprendi, 530 U.S. at 466, 120 S.Ct. 2348.
AFFIRMED.
GUNTHER, KLEIN and HAZOURI, JJ., concur.