803 So.2d 821 (2001)
Terrance E. McCLOUD, Appellant,
v.
STATE of Florida, Appellee.
No. 5D97-2011.
District Court of Appeal of Florida, Fifth District.
December 28, 2001.
James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jennifer Meek, Assistant Attorney General, Daytona Beach, for Appellee.

*822 EN BANC

GRIFFIN, J.
This case appears before us on remand from the United States Supreme Court. See McCloud v. Florida, 531 U.S. 1063, 121 S.Ct. 751, 148 L.Ed.2d 654 (2001). The Supreme Court's opinion was succinct:
On petition for writ of certiorari to the District Court of Appeal of Florida, Fifth District. Motion of petitioner for leave to proceed in forma pauperis and petition for writ of certiorari granted. Judgment vacated, and case remanded to the District Court of Appeal of Florida, Fifth District, for further consideration in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
Id.
This court's en banc opinion, vacated by the Supreme Court as described above, was issued on January 8, 1999. See McCloud v. State, 741 So.2d 512 (Fla. 5th DCA 1999), vacated and remanded, 531 U.S. 1063, 121 S.Ct. 751, 148 L.Ed.2d 654 (2001). In that opinion, which involved a sexual battery conviction, we held "that all issues pertaining to the assessment of points on the [sentencing guidelines] scoresheet are to be determined by the court, not the jury, and that the defendant is not constitutionally entitled to have a jury make the predicate factual determination for the scoring of penetration." Id. at 512-13. That holding must now be reexamined by this court in light of the holding of Apprendi: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
Apprendi was a five-to-four decision of the United States Supreme Court in which the various opinions of the justices reflected sharp disagreement concerning the scope and meaning of the majority opinion. Commentators and courts that have thus far weighed in on Apprendi demonstrate a parallel uncertainty. See, e.g., People v. Carney, 196 Ill.2d 518, 256 Ill.Dec. 895, 752 N.E.2d 1137 (2000); Stephen A. Saltzburg, Due Process, History and Apprendi v. New Jersey, 38 Am.Crim. L.Rev. 243 (2001); Robert Batey, Column, Sentencing Guidelines and Statutory Maximums in Florida: How to Best Respond to Apprendi, 74 Fla. B.J. 57 (2000); Joseph Hoffman, Apprendi v. New Jersey, 38 Am. Crim. L.Rev. 255 (2001); Benjamin Priester, Constitutional Formalism and the Meaning of Apprendi v. New Jersey, 38 Am.Crim. L.Rev. 281 (2001). In order for the high court and anyone else not steeped in Florida's sentencing procedures to appreciate our difficulty in applying the holding of Apprendi, a brief explanation of the relevant sentencing guidelines is in order.
Florida has long been engaged in an effort to create a viable determinate sentencing scheme. The 1995 sentencing guidelines, which are applicable to this case, operated on a point system calculated on a "scoresheet" prepared for the sentencing hearing. § 921.0014, Fla. Stat. (1995). Crimes were categorized by offense severity level and a table contained in the statutes set forth the precise number of points to be assessed for the primary offense scored at conviction. Next, points were scored for additional convicted offenses. Third, the physical injury inflicted on the victim during the convicted offenses had to be evaluated to determine whether it should be categorized as either: "death", "severe", "sexual penetration", "moderate", "sexual contact", or "slight".[1] *823 If the trial judge, based on a preponderance of the evidence, found such a level of injury, it was scored a specific number of points.
After totaling the points for all these categories, a calculation of "prior record" points was made using a separate chart. Next, additional points were assessable for several separate categories such as "legal status" (meaning whether the defendant was on probation or community control when he committed the offense). Once all the points were scored and totaled, a calculation of state prison months was made. This was done by simply subtracting the number twenty-eight from the total score. The resulting number became a specific number of prison months, referred to as the "recommended sentence." The next entry on the scoresheet called for the calculation of twenty-five percent above the recommended sentence and twenty-five percent below. This would be the range of sentencing discretion given the trial court without having to follow the guidelines "departure procedure," which would require the finding of one or more statutorily identified upward or downward departure grounds. If the judge found a ground for upward departure, he or she was authorized to impose any sentence within the relevant maximum sentence for the particular degree of crime set forth in section 775.082, Florida Statutes. § 921.0016(1)(e) (1995).
Section 775.082, Florida Statutes (1995), entitled "Penalties", which long predates the advent of sentencing guidelines, identifies the range of penalties applicable to every degree of offense existing in Florida from a capital felony to a second-degree misdemeanor. This statute expressly sets forth the maximum penalty for every degree of offense. A second-degree felony, for example, is punishable "by a term of imprisonment not exceeding fifteen years." § 775.082(3)(c), Fla. Stat. (1995). The maximum penalties set forth in section 775.082 are referred to as the "statutory maximum" for each offense. See Mays v. State, 717 So.2d 515 (Fla.1998). Unless the offender falls within a category which qualifies for special sentencing treatment, such as "habitual offenders," the statutory maximum can only be exceeded if the guidelines range is greater than the statutory maximum.
McCloud was convicted of three second-degree felonies: sexual battery, burglary of a dwelling and lewd or lascivious act in the presence of a child. His case may be a propitious one for beginning an analysis of whether and how Florida's myriad of guidelines sentencing schemes stand up under Apprendi because McCloud's guidelines scoresheet is an uncharacteristically simple one.[2] The sentencing calculation *824 under the 1995 sentencing guidelines was the following:

Primary offense
 Sexual battery second-degree felony 74 points
Additional offenses
 Burglary of an occupied dwelling,
 second-degree felony 28 points
 Lewd, lascivious act in the presence
 of a child 28 points
Victim injury
 Sexual penetration 80 points
 Prior record 2 points
 __________
 Total 212 points
 212 minus 28 = 184.0 recommended sentence
 184.0 × .075 = 138 minimum prison months
 184.0 × 1.25 = 230 maximum prison months

In order to determine whether the rule of Apprendi applies to require that the determination of victim injury be submitted to a jury and proved beyond a reasonable doubt, it is necessary to determine the "statutory maximum" for purposes of applying Apprendi. Is it fifteen years? Is it 230 months, or is it something else? Judge Harris suggests the "statutory maximum" would be the number of prison months yielded by scoring the convicted offenses alone under the guidelines. Because, under the sentencing guidelines, every point is equal to a prison month, the addition of even a single point will affect the guidelines sentencing range. Whenever any point is added for any reason, except recidivism, the resulting score will yield a sentence above the score for the crime standing alone; therefore, reasons Judge Harris, any such ground under the sentencing guidelines for adding any sentencing points above those assessable for the convicted offenses (and recidivism) must be proved to a jury beyond a reasonable doubt. This interpretation and application of Apprendi has support in Apprendi's majority opinion and even more in the concurring opinions. Also, there is an illogic to the constitutional imperative of a jury finding beyond a reasonable doubt for any sentencing fact that increases punishment even one day beyond the "statutory maximum" but makes no such requirement if the same fact is used to increase punishment for any amount of time below the statutory maximum. As a Fordham University law student recently observed in a fine student note attempting to decipher Apprendi:
If the Constitution entitles defendants to heightened protections at sentencing, then such protections should extend to every determination that a judge makes and not just be triggered by "the maximum." As a practical matter, after Apprendi, defendants' sentences can still be substantially increased as a result of findings made by judges, rather than juries, using merely a preponderance of the evidence standard. This interpretation yields the absurd result of continuing to allow judges to make findings of *825 fact that increase the length of the defendant's sentence within the prescribed statutory maximum penalty, while they cannot make decisions that would raise the penalty above the statutory maximum.
Andrew J. Fuchs, Note, The Effect of Apprendi v. New Jersey on the Federal Sentencing Guidelines: Blurring the Distinction Between Sentencing Factors and Elements of a Crime, 69 Fordham L.Rev. 1399, 1427 (2001) (footnotes omitted.) Yet, ultimately, Mr. Fuchs and most others who have thus far undertaken an analysis of Apprendi appear to conclude that the court did indeed intend to preserve the trial judge's power to sentence within the commonly understood "statutory maximum" by making traditional sentencing judgments and to require proof to a jury beyond a reasonable doubt only where inclusion of these factors would increase the severity of the penalty beyond the statutory maximum. Stephen A. Saltzburg, supra; Robert Batey, supra; Joseph Hoffman, supra; Fuchs, supra, at 1433.
Florida's sentencing guidelines were initially developed as a result of legislation passed in 1982. The legislature's stated purpose for creation of the guidelines is:
[T]o establish a uniform set of standards to guide the sentencing judge in the sentence decisionmaking process. The guidelines represent a synthesis of current sentencing theory, historical sentencing practices, and a rational approach to managing correctional resources. The sentencing guidelines are intended to eliminate unwarranted variation in the sentencing process by reducing the subjectivity in interpreting specific offense-related and offender related criteria and in defining the relative importance of those criteria in the sentencing decision.
§ 921.001, Fla. Stat. (1995).
Although it is true that the sentencing guidelines can confine a sentence for a given offense to a number of prison months less than the statutory maximum applicable to the degree of crime committed, and that certain facts must be present to alter the score and thereby enlarge the trial judge's scope of sentencing discretion, it would also seem to be true, based on Apprendi, that this restraint on sentencing judges would present no constitutional issue. Indeed, it would seem that the constitution would favor objective guideposts for the exercise of judicial sentencing discretion. The guidelines organize and objectify what may otherwise be subjective and diffuse. If any sentence up to the statutory maximum is available absent the guidelines, imposition of a guidelines sentence within that statutory maximum would not seem to present an issue like the one the high court found in Apprendi. If it were, especially in the face of the lugubrious warnings of the dissents, it would be surprising for the Apprendi majority to dismiss the issue in a brief footnote, as it seems to have done:
The principal dissent, in addition, treats us to a lengthy disquisition on the benefits of determinate sentencing schemes and the effect of today's decision on the federal Sentencing Guidelines. The Guidelines are, of course, not before the Court.
530 U.S. at 497 n. 21, 120 S.Ct. 2348.
All of the federal circuit courts of appeal that have considered this issue have agreed that:
a district court may make various factual determinations under the guidelines, thereby affecting a defendant's sentence, so long as such determinations do not *826 cause the defendant's sentence to exceed the prescribed statutory maximum for that crime.
United States v. Skidmore, 254 F.3d 635, 643 (7th Cir.2001). See also, United States v. Bennett, No. 00-5637, 2001 WL 1450741 (6th Cir. Oct.30, 2001); United States v. Sanchez, 269 F.3d 1250 (11th Cir.2001); United States v. Hussey, 254 F.3d 428 (2d Cir.2001); United States v. Robinson, 241 F.3d 115 (1st Cir.), cert. denied, ___ U.S. ___, 122 S.Ct. 130, 151 L.Ed.2d 84 (2001); United States v. Garcia, 240 F.3d 180 (2d Cir.), cert. denied, ___ U.S. ___, 121 S.Ct. 2615, 150 L.Ed.2d 769 (2001); United States v. Enigwe, No.Crim. A. 92-257, 2001 WL 708903 (E.D.Pa. June 21, 2001).
In a recent decision of the District of Columbia Court of Appeals, that court rejected the claim that Apprendi required guidelines enhancements to be determined by a jury and proved beyond a reasonable doubt. In re: Sealed Case, 246 F.3d 696 (D.C.Cir.2001). After noting the long-standing role of judges in exercising discretion within statutory limits and the high court's allowance of sentencing enhancements based on a preponderance of the evidence, the District of Columbia Court of Appeals observed:
Given this traditional latitude, and the Apprendi Court's explicit endorsement of the tradition, it is hard to see how the Court could have intended to mandate the heightened standard for application of the Guidelines' enhancement instructions when the resulting sentence remains within the statutory maximum. Reading the Apprendi rule to avoid such a result is consistent with the Court's statement that the case addressed a "narrow issue."
Id. at 699.
In this case, McCloud's maximum guidelines score for three second-degree felonies (230 months) resulted in a possible sentence of as many as fifty prison months above the fifteen year statutory maximum for one second-degree felony (180 months). McCloud was sentenced to 184 months for each of the three offenses, to be served concurrently. Assuming that only the sexual battery offense is taken into account, the statutory maximum for that single offense was fifteen years, or 180 months. Because the victim injury points scored by virtue of the judge-determined penetration sentencing factor was a component of the score that made possible a sentencing range for the single offense that exceeded 180 months, it is true that the 40 "sexual penetration" victim injury points assessed by the trial judge increased McCloud's available sentence above the statutory maximum by four months. § 775.082(3)(c), Fla. Stat. (1995).[3]
We do not reach this apparent Apprendi violation, however, because to complicate matters even more, after McCloud was decided, the 1995 sentencing guidelines were declared unconstitutional by the Supreme Court of Florida based on a violation of the state constitution's "single subject" rule. See Heggs v. State, 759 So.2d 620 (Fla.2000). Therefore, irrespective of the issues presented in this case, McCloud will have to be resentenced using a 1994 Florida Sentencing Guidelines Worksheet.
Using a 1994 sentencing guidelines worksheet, it would appear that, even including the complained-of points awarded *827 for the judge-determined "sexual penetration", McCloud's maximum potential sentence no longer reaches the fifteen year "statutory maximum" for the crime. Under the 1994 sentencing scheme, his maximum prison months score is 166 months. That being the case, assuming "statutory maximum" means the fifteen year maximum sentence for a second-degree felony (180 months), the Apprendi issue is resolved.
It appears to us that the Florida courts that have considered Apprendi thus far understand the term "statutory maximum" under Florida's sentencing scheme to be the maximum penalties set forth in section 775.082. McGregor v. State, 789 So.2d 976 (Fla.2001), approving Kijewski v. State, 773 So.2d 124 (Fla. 4th DCA 2000), review denied, 790 So.2d 1105 (Fla.2001). See Gilson v. State, 795 So.2d 105 (Fla. 4th DCA 2001)(penetration "is merely a `sentencing factor' that the judge considered in his broad discretion to sentence, `within the range prescribed by statute'")(citing Apprendi, 530 U.S. at 466, 120 S.Ct. 2348)(emphasis in original). We agree with Judge Harris, however, that only the Supreme Court of the United States can say what "statutory maximum" means to them in the context of determinate sentencing schemes such as the one at issue here.
In Caraballo v. State, 805 So.2d 882 (Fla. 2d DCA 2001), the Second District Court of Appeal recently considered the question whether the trial court erred in assessing victim injury points for sexual battery without a jury finding that victim injury was proven beyond a reasonable doubt. The court held that because Caraballo's sentence of twenty-three years for the first-degree felony was less than the statutory maximum of thirty years as set forth in section 775.082(3)(b), Florida Statutes, the defendant was not entitled to relief under Apprendi.
We hold that, in Florida, for purposes of determining a constitutional violation under Apprendi, the relevant "statutory maximum" is found in section 775.082. We choose this answer to the question posed by the United States Supreme Court's remand because it is our best guess about what Apprendi means. It also seems consistent with the views of others that so long as the statutory maximum applicable to the crime (not the guidelines range applicable to the circumstances of a particular offense) is not exceeded, the sentencing judge may determine sentencing factors by a greater weight of the evidence standard. We also choose this answer because virtually every sentence involving a crime of violence that has been handed down in Florida for almost two decades has included a judicially-determined victim injury component to the guidelines score. Justice O'Connor's observation that the effect of Apprendi to guidelines sentencing would be "colossal"[4] barely describes the cataclysm in Florida if such sentences are invalidated because the jury did not make the "victim injury" finding. Before we take that path, we should have a clearer mandate from the United States Supreme Court that it is constitutionally required.
Accordingly, we remand this case for resentencing under the 1994 guidelines and hold that points on the 1994 guidelines scoresheet for "sexual penetration" may be included because the inclusion of these points does not cause the imposition of a sentence more severe than the statutory maximum for the second-degree felony of *828 sexual battery established by the jury's verdict.[5]
SENTENCE VACATED and REMANDED for proceedings in accordance with this opinion.
THOMPSON, C.J., SHARP, W., PETERSON, SAWAYA, PLEUS, JJ., concur.
HARRIS, J., concurs and dissents in part, with opinion, in which COBB, PALMER and ORFINGER, R.B., JJ., concur.
HARRIS, J., concurring in part, dissenting in part.
I concur in vacating the sentence for a Heggs resentencing; I dissent from the notion that the judge is free to decide the issue of penetration when the defendant is charged with sexual battery under section 794.011. I read Apprendi's remand more broadly than the majority. A unanimous Apprendi court tells us that if the sentencing fact is an element of the offense, it must be decided by the jury to the exclusion of any doubt. Since penetration is a part of the definition of sexual battery [section 794.011(1)(h) ], it is difficult to envision it as anything but an element of the offense. Although Apprendi primarily speaks to the issue addressed by the majority, it starts from the proposition that the sentencing fact at issue therein was not an element of the offense as it is in this case. The majority does not discuss the Apprendi remand as it relates to a case in which the sentencing fact is also an element of the offense.
Obviously this case involves an interpretation of the United States Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). It appears that there are serious disagreements as to the requirements of Apprendi when the court wishes to increase the sentence prescribed for the offense at conviction.[1] Perhaps only the United States Supreme Court can resolve the issue.
Apprendi holds that:
"Due Process requires that every element of the crime charged must be proved, to a jury, beyond a reasonable doubt. Included within this requirement is the necessity for a strictly defined and easily predictable sentence directly attached to the crime: The accused must be sufficiently apprized of the consequences of his act and ensured a review of those facts by a jury of his peers. Even though the prescribed sentence must be strictly defined, there may be a provision within the sentence for a maximum and minimum bound within which the accused must be sentenced. It is unconstitutional for the legislature to remove from the jury the examination of any facts that increase the prescribed range of penalties to which the accused is exposed. Therefore, any fact which, if proved, allows the judge to exceed the maximum bound of the prescribed sentence, must be proved to a jury, to a constitutional sufficiency. However, any fact which, if proved, provides for a higher sentence within the prescribed bounds need not be proved to a jury to a constitutional certainty. Instead, these sentencing factors may be determined by the judge by a preponderance of the evidence. See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
Apprendi therefore speaks in terms of "elements of the crime charged" which *829 must be proved to a jury to a constitutional certainty and sentencing "facts" (which are not elements of the charged offense) which may be determined by a judge based on a preponderance of the evidence if such facts do not increase the maximum bounds created by the "statutory" maximum sentence.[2]
This case involves penetration, an alternative "element" of the offense charged, and therefore, under Apprendi, must be decided by the jury.[3] The dissent in Apprendi concurred with the principle that all elements of the offense must be found to exist by the jury saying:
No member of this Court questions the proposition that a State must charge in the indictment and prove at trial beyond a reasonable doubt the actual elements of the offense.
A general verdict, as was entered in this case, merely indicates that at least one of the alternative elements was proved; it is not a jury verdict that penetration occurred.[4] In the case before us, penetration was charged as an alternative element: contact or penetration.[5] Although contact was adequately proved, penetration was not proved beyond and to the exclusion of every reasonable doubt.[6] The victim was too drunk to remember and the child witness only saw the defendant "on top" of the victim. Because penetration and contact are alternative elements of the offense, it is the jury which must decide whether one or both or neither alternative was proved. If we assume in this case that the jury found only contact, as I believe we must,[7] how can the judge later constitutionally find that penetration in fact occurred? If the jury determined that only contact was proved, this would be the equivalent of an acquittal to the charge that penetration occurred. Enhancers may not be based on allegations in charges which have resulted in an acquittal. See section 921.0011(7)(a), Fla. Stat. Even though the defendant has committed the offense of sexual battery, regardless of which alternative element is proved, because a greater sentence may be imposed depending on the element proved the jury must decide which element was proved during the trial. Suppose the State, knowing *830 it could not prove penetration beyond a reasonable doubt, charged only contact and obtained a verdict. Could a trial court, on its own and based on a preponderance of the evidence, find penetration for the purpose of sentencing?[8]
I submit it is constitutionally unacceptable to support an enhanced sentence based on an alternative element of the charged offense which is not proved to the jury beyond a reasonable doubt.[9] Because it is an element of the offense charged, and not merely some collateral fact which makes the sentencing distinction in this case, Apprendi requires that it is the jury and not the judge which must determine whether penetration occurred. There is no indication in this record that the jury made such a finding.
Although I believe the above analysis requires a reversal, even if we consider penetration as an enhancer somehow different from penetration as an element, still, under Apprendi, it may well remain a jury issue. Justice Stevens, writing for the majority, observed, "At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without `due process of law....'" Apprendi, 530 U.S. at 476, 120 S.Ct. 2348. Apprendi does not speak merely in terms of statutory maximums. It speaks also in terms of "prescribed range[s] of penalties." If one is improperly deprived of liberty by a sentence greater than justified by the verdict, is he not denied due process even if the excessive sentence does not also exceed the statutory maximum? This question prompted the dissent in Apprendi to suggest that the holding of the majority may be: "that any fact (other than prior conviction) that has the effect, in real terms, of increasing the maximum punishment beyond an otherwise applicable range must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 543, 544, 120 S.Ct. 2348. (Emphasis added).[10] The dissent, therefore, suggests that Apprendi may have dire consequences on the federal sentencing guideline scheme. Although the dissent's concern is clear, its reasoning is not. No one ever suggested that compliance with constitutional *831 requirements would not be inconvenient. The guideline scheme can still function; it will merely require that the jury, and not the judge, make many of the relevant decisions. The majority's response to the dissent's concern was that since the guidelines were not implicated in the case before it, the effect of sentencing guidelines would have to await another day.
In this case, the guidelines are implicated. This is because Florida's guideline sentencing process, at the time of this offense[11], set one maximum permitted sentence for sexual battery involving contact and a greater maximum sentence for sexual battery involving penetration.[12] Thus, when the jury returns its verdict, it has established the maximum sentence depending on its findings relative to contact or penetration. In Apprendi, a 10 year statutory maximum, not a guideline range, was increased because of the collateral hate enhancer. But in Florida, at least at the time of this offense, the statutory maximum of 15 years for a second degree felony was supplanted by statutory guideline sentencing.[13] Our law at the time this offense was committed provided a maximum and minimum range of sentencing based on a point system. The judge, unless he or she could find aggravating factors to justify exceeding such guideline range, was limited to that maximum sentence.[14]
The maximum sentence for sexual battery with only contact (40 points) was less than the maximum sentence for sexual battery with penetration (80 points). If we assume that the jury found only contact, *832 again as I believe we must, then there was a specific maximum guideline range to which the court was bound, a range based on 40 points for contact. A judicial finding of penetration was immaterial in setting the sentence within the range set for sexual battery involving only contact, the only offense justified by the jury verdict. Instead, the judge's finding of penetration created an entirely new and greater range for the court to consider: a range based on sexual battery involving penetration, an element not found to exist by the jury. It thus allowed the judge to "exceed the maximum bound of the prescribed sentence" for the offense at conviction (sexual battery with contact) and, under Apprendi, violated McCloud's constitutional right to have this fact submitted to the jury.
There should be no constitutional problem with the judge deciding matters that are unrelated to any criminal conduct. For example, the following facts have traditionally been considered as bearing on punishment alone and should be decided by the judge: the criminal record of the defendant (it is not a crime to have a criminal record) and the identity of the defendant as being the one whose criminal record is before the court (identity in this instance has no bearing on proving a new violation of law).[15] Further, the defendant's "legal status" which resulted from a previous conviction or plea should be determinable by the judge as should the points applicable based on the judge's finding of a community sanction violation. A much closer question was recently decided by our supreme court in McGregor v. State, 789 So.2d 976 (Fla.2001), in holding that defendant's date of release from prison under the Prison Releasee Reoffender Act which enhanced his sentence would not require a jury determination.[16] This is because, said the court, defendant's sentence was not enhanced "beyond the prescribed statutory maximum." We cannot tell from McGregor (or from the appellate decision certifying the issue) when McGregor's offense occurred. Certainly if it was after October 1, 1998, then his guideline maximum and his statutory maximum would have been the same (assuming his minimum guideline range did not exceed the statutory maximum). The court did not discuss whether it read Apprendi as not applying to enhancement over and above mandatory guideline maximums which were less than the statutory maximum. That issue will almost certainly be before the United States Supreme Court in the near term.
It is inescapable that, after considering all other factors, the statutory maximum sentence for the charged offense herein depends on whether the defendant committed the element of penetration or contact. Without a specific jury finding to the contrary, the defendant herein committed the offense of sexual battery by contact and should be sentenced accordingly.
Therefore, I would remand for resentencing because (1) the jury failed to specifically find that the element of penetration had occurred and therefore the sentence imposed is illegal and (2) even if the fact of penetration is not considered an element, still the sentence in this case *833 increased the maximum sentence otherwise permitted for the offense of sexual battery with contact and, under Apprendi, a new sentencing is required.
COBB, PALMER and ORFINGER, R.B., J.J., concur.
NOTES
[1] The sexual penetration category was added in response to a 1992 decision by the Supreme Court of Florida that sexual penetration alone did not qualify as a victim injury under the relevant rule of criminal procedure. Karchesky v. State, 591 So.2d 930 (Fla.1992).
[2] On the other hand, this case also presents a complication that Judge Harris has discussed at length. In Florida, sexual battery, section 794.011(1)(h), Florida Statutes, consists either of oral, anal or vaginal penetration or union with the sexual organ of another. No special verdict asked the jury whether it found both union and penetration or only union. Judge Harris suggests that, at sentencing, the trial judge must conclude that only "union" was found by the jury and, thus, may only score victim injury sentencing points attributable to the victim injury category of "sexual contact" (40 points), rather than the victim injury category of "sexual penetration" (80 points). This argument was discussed in the original majority opinion and dissent. 741 So.2d at 514-16. We do not believe this issue was the reason for the Supreme Court's remand for reconsideration in light of Apprendi. Although the key phrases important in Apprendi show up in this discussion, this is not really an Apprendi issue. If Judge Harris is correct that any sentencing factor that affects the guidelines sentence has to be determined by the jury, it does not matter whether it is an alternative element of the offense. If he is wrong, it also does not matter, for reasons explained in this opinion.

McCloud was convicted by the jury of the crime of sexual battery. When he was sentenced for this crime under the guidelines, the court was obliged to consider many factors, among them what level of injuries he inflicted while committing the offense. There may be no more basic factor a sentencing judge may take into consideration than the effect of the crime on the victim. The fact that we cannot know whether the jury found sexual penetration beyond a reasonable doubt as an element of the offense does not mean that "sexual penetration" injury points cannot be assessed by the trial judge at sentencing. It is a mistake to confuse the "union" element of the crime of sexual battery with the "contact" category of victim injury on the scoresheet and confuse the offense element of penetration with the "penetration" level of injury on the scoresheet. There is no reason why the court should be disabled from evaluating the extent of victim injury as a sentencing factor simply because it is similar to an alternative offense element.
[3] Even if Apprendi would forbid a sentence for sexual battery above 180 months, a sentencing combination for the three crimes could achieve the same 184 months overall sentence.
[4] Id. 530 U.S. at 551 120 S.Ct. 2348 (O'Connor, J., dissenting).
[5] Accord Caraballo v. State, supra.
[1] See Gilson v. State, 795 So.2d 105, (Fla. 4th DCA 2001).
[2] The "statutory maximum" sentence in Apprendi was between 5 and 10 years for a "second-degree" offense, possession of a firearm for an unlawful purpose. The sentencing collateral "fact" involved in Apprendi was racial motivation which authorized an extension of the maximum sentence to 20 years.
[3] Even though it is an alternative element, if the defendant is to be sentenced as though such element was proved it must be the jury that makes that determination.
[4] If the judge, at sentencing, undertakes to determine whether the greater offense, sexual battery with penetration, has occurred, is he not invading the province of the jury and, by reconsidering the issue after trial, is not double jeopardy implicated?
[5] It seems patently unfair to charge in a single count alternative ways to commit an offense, alternatives which call for differing penalties, and obtain a verdict which may have been based on the less serious alternative and yet sentence on the basis of the greater.
[6] As a matter of fact, there was no credible evidence to support the fact that penetration occurred even under the preponderance of the evidence standard. The only evidence is that the defendant was "on" the victim; unless contact is sufficient to prove penetration, this is insufficient. Therefore, even had the jury by interrogatory verdict found penetration to have occurred, such verdict could not be sustained under the evidence presented in this case.
[7] See Torna v. State, 742 So.2d 366 (Fla. 3d DCA 1999). This result is consistent with the policy dictated by section 775.021(1) and is suggested by the holding in Valentine v. State, 688 So.2d 313 (Fla.1996).
[8] Again, the dissent in Apprendi recognizes this potential:

Third, the New Jersey statute gives no impression of having been enacted to evade the constitutional requirements that attach when a State makes a fact an element of the charged offense. For example, New Jersey did not take what had previously been an element of the weapons possession offense and transform it into a sentencing factor.
Apprendi, 530 U.S. at 552, 120 S.Ct. 2348.
[9] Prior to 1987, this case would not have occurred. Prior to that time, only when a victim injury was an essential element of the charged offense could it affect the scoresheet. Hence, in all cases, the jury would have found the presence of the victim injury. In the opinion amending the rule to permit all injuries occurring "during a criminal episode or transaction" to be counted for sentencing, Justice Barkett in her concurring/dissenting opinion anticipated this problem:

When there is evidence to support additional offenses resulting in victim injury, then the state's due-process obligation is to charge and prove that crime beyond a reasonable doubt if the defendant denies the charges or raises affirmative defenses. The defendant has a right to a jury determination of guilt on such factual issues.
See Florida Rules of Criminal Procedure, 509 So.2d 1088, 1090 (Fla.1987).
[10] Some federal appellate courts have construed Apprendi as applying when the sentence exceeds the punishment authorized by the jury's verdict. See U.S. v. Nordby, 225 F.3d 1053, 1059 (9th Cir.2000) ("Apprendi makes clear that the `prescribed statutory maximum' refers simply to the punishment to which the defendant is exposed solely under the facts found by the jury."). See also U.S. v. Strayhorn, 250 F.3d 462 (6th Cir.2001).
[11] Effective October 1, 1998, the legislature amended the Criminal Punishment Code by providing that the range for sentencing would be the "lowest permissible sentence [determined by the sentence points] up to and including the statutory maximum" [unless the lowest permissible sentence determined by the sentence points exceeded the maximum sentence in which case the guideline minimum would control]. Obviously, if the current law had been in effect at the time this offense was committed there would be no Apprendi problem because the prescribed sentence based either on penetration or contact would be within the court's discretion. Only if the minimum prescribed guideline sentence based on contact or penetration exceeded the general statutory maximum would Apprendi apply and, in that instance, the jury would have to determine this factual basis for extending the sentence.
[12] In the symposium, "Constitutional Formalism and the Meaning of Apprendi v. New Jersey" published in 38 Am.Crim. L.Rev. 281-2001, the author suggests that after the remand of Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), it appears that to the extent guideline ranges are altered by factual findings, separate offenses are created.
[13] Because in statutory construction the specific prevails over the general, the statutory guideline maximum sentence which applies specifically to the offense at sentencing controls over the statute which sets maximums for offenses generally and hence the statutory guideline sentence becomes in fact the statutory maximum. When the guideline sentence is applicable, the more general statute becomes irrelevant; it is as though the more general limitation doesn't exist. If, of course, there is reason for the court to depart from the guidelines and sentence in accordance with the general statute, then the distinction between contact and penetration becomes meaningless and the Apprendi concerns go away.
[14] This point system is well laid out in the majority. Since 1994, a guideline sentence which exceeds the maximum statutory sentence controls. In this case, it appears that whether the defendant "contacted" or "penetrated," his sentence would exceed the statutory maximum with the amount of the excess depending on the element proved. Apprendi does not invalidate the law making the guideline sentence control; it merely requires that the jury, and not the judge, determine those facts which cause a greater sentence. Therefore, merely resentencing under Heggs is not the answer.
[15] As explained in Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), recidivism is a traditional sentencing factor which need not be set out in the indictment and "[o]ne basis for the possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense ..., a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees."
[16] This issue is much closer to the hate enhancer involved in Apprendi.