949 So.2d 1169 (2007)
Melvin B. THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D06-0420.
District Court of Appeal of Florida, First District.
March 2, 2007.
*1170 Nancy A. Daniels, Public Defender, and Fred Parker Bingham II, Special Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
HAWKES, J.
Appellant appeals the trial court's denial of his motion for post-conviction relief. In the motion filed below, appellant alleged a number of grounds for relief. However, on appeal, appellant makes arguments relating to only three of his previously raised grounds. This Court holds that all three of appellant's claims are devoid of merit, and; therefore, affirms the circuit court's denial of appellant's motion for post-conviction relief.

*1171 I. FACTS

On February 23, 1996, appellant's attorney filed a motion to withdraw as counsel for appellant. In support of this motion, appellant's attorney argued that appellant had threatened to physically harm both counsel and his family. On March 6, 1996, Judge Smith conducted the hearing on this motion. At this hearing, trial counsel stated that, if convicted, appellant threatened to kill counsel, members of counsel's family, anyone associated with his case, and then himself. Counsel further relayed that appellant had indicated he was going to enjoy prison, because it would provide him with the opportunity to lift weights, smoke pot, and prepare himself to kill everyone involved in his case  prior to killing himself.
At this point, the following exchange took place between defense counsel and the court.
The Court: So if convicted in that case, he will be spending the rest of his life in prison?

Mr. Greenberg: Perhaps if that's what the guidelines call for.
The Court: With a first degree punishable by life, I don't think we need to be worrying about the guidelines. So his threat is that when he gets out of prison, he's going to make you pay for it and kill you and kill me and Mr. Poitinger and Mr. Murrell and the families and everybody.
(Emphasis added). The trial court then denied counsel's motion to withdraw stating, "[i]f there has been a threat made, the Court concludes that it was a threat that could never be carried out. If he's convicted, which was the condition of his threat, if he's convicted, he will be in prison for the rest of his life and he couldn't do physical harm to . . . anyone else."
On March 20, 1996, defense counsel filed a motion to disqualify Judge Smith, as trial judge. The motion alleged that appellant was concerned that Judge Smith had prejudged sentencing. This belief was grounded upon the fact that, before hearing any evidence of aggravation or mitigation, Judge Smith stated "[w]ith a first degree punishable by life, I don't think we need to by worrying about the guidelines" and "if he's convicted, he will be in prison for the rest of his life." The trial court properly denied this motion as untimely. See Thompson v. State, 764 So.2d 630, 631-32 (Fla. 1st DCA 2000) (upholding the trial court's denial of appellant's motion to disqualify, because it was filed more than 10 days after counsel became aware of the facts supporting the motion, but noting that had it been timely filed Judge Smith would have been impelled to recuse himself).[1]
On May 30, 1997, after the conclusion of his jury trial, appellant was found guilty as charged of sexual battery with a deadly weapon (Count I), burglary of a dwelling with a specific finding of "while armed" and "with a person assaulted" (Count II), aggravated assault with a deadly weapon (Count III), and false imprisonment (Count IV). The sentencing score sheet established a minimum discretionary sentence of 122.5 months and a maximum discretionary sentence of 204.2 prison months.
On September 17, 1997, the trial court set forth its findings of aggravating circumstances justifying the imposition of departure sentences. The trial court noted *1172 appellant's past criminal behavior, and identified an escalating pattern of criminal conduct. Specifically, the court noted that appellant has (1) moved from committing misdemeanor offenses to committing felonies, and (2) moved from committing property crimes to committing violent crimes. As a result, the court determined appellant was not amenable to rehabilitation or supervision. Moreover, the court found that appellant had treated his victim, in the instant case, with particular cruelty. Appellant caused her extraordinary emotional trauma, because of his especially heinous, atrocious, and cruel crimes. The court noted the rape victim's condition of being a virgin prior to the assault, the fact that she was entirely innocent of any fault for what transpired, that she was put in great fear for her life, and that during the assault she was led to believe that her roommate had already been killed.
Subsequent to making these findings, the trial court sentenced appellant to life imprisonment on Count I, five years concurrent imprisonment on Counts II and IV, and life probation to run consecutive to the prison sentences on Count II. Appellant received 570 days of credit for time spent in custody. Appellant filed a direct appeal with this Court. The trial court was affirmed on appeal, and on December 7, 2000, the Florida Supreme Court declined to accept jurisdiction. Accordingly, appellant's conviction and sentence became final on that date.
On July 30, 2004, appellant filed an Amended Motion for Postconviction Relief. Ground I of the amended motion alleged that trial counsel was ineffective for filing a legally sufficient motion to disqualify the trial and sentencing judge more than ten days after learning of the grounds for disqualification. Alternatively, appellant alleged that trial counsel was ineffective for failing to put on the record any explanation for untimely filing the meritorious motion to disqualify. Ground II of the amended motion alleged that the departure sentences of life imprisonment and life probation were imposed solely on the court's findings of aggravating facts, without those facts being submitted to a jury and proven beyond a reasonable doubt. Accordingly, appellant argued that his sentence was constitutionally invalid in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The circuit court denied appellant's motion, and attached twelve exhibits to this denial. The instant appeal followed.

II. APPELLANT'S RULE 3.800 CLAIMS

Under appellant's first ground on appeal, he argues that the circuit court erred in summarily denying his rule 3.800(a) claim, which alleged that the imposition of a life sentence for his conviction on the sexual battery with a deadly weapon charge (Count I) was an unconstitutional and illegal sentence. Similarly, in his third ground on appeal, appellant argues that the circuit court erred in summarily denying his 3.800(a) claim, which alleged that the imposition of a sentence of probation for life on his conviction for burglary of a dwelling (Count II)  with a specific finding of "while armed" and "with a person assaulted"  resulted in an unconstitutional and illegal sentence. In support of both ground one and ground three, appellant relies upon the United States Supreme Court decision of Apprendi (stating that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt), as that decision has been explained by Blakely (clarifying that the term "statutory *1173 maximum," as used in Apprendi, means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant").[2]
In several decisions issued after Apprendi, but prior to Blakely, Florida courts held that the rule of Apprendi, does not apply when the sentence imposed does not exceed the statutory maximum permitted by section 775.082, Florida Statutes. See Isaac v. State, 826 So.2d 396 (Fla. 1st DCA 2002); Lee v. State, 808 So.2d 1274 (Fla. 3d DCA 2002); McCloud v. State, 803 So.2d 821 (Fla. 5th DCA 2001); Caraballo v. State, 805 So.2d 882 (Fla. 2d DCA 2001); Gilson v. State, 795 So.2d 105 (Fla. 4th DCA 2001). Pursuant to sections 794.011(3) and 775.082, Florida Statutes, appellant's Count I conviction is a "life felony," and is punishable "by term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment." Pursuant to sections 810.02(2)(a), (b) and 775.082, Florida Statutes, appellant's Count II conviction is a "felony of the first degree," and is "punishable by imprisonment for a term of years not exceeding life imprisonment."
Appellant's conviction and sentence became final on December 7, 2000, just after Apprendi had issued, but four years before Blakely was to be decided. Florida courts, including this one, have generally agreed that Blakely has no application to cases that were already final when Blakely was handed down. See Smith v. State, 899 So.2d 475 (Fla. 1st DCA 2005); Burgal v. State, 888 So.2d 702 (Fla. 3d DCA 2004); Burrows v. State, 890 So.2d 286 (Fla. 2d DCA 2004); McBride v. State, 884 So.2d 476 (Fla. 4th DCA 2004). At the time appellant's sentence became final, the rule of Apprendi did not apply to his sentences, because the sentences imposed did not exceed the statutory maximums prescribed by section 775.082, Florida Statutes. Moreover, Blakely has no application to appellant's case, because his judgment and sentence were already final when Blakely was handed down. Therefore, to the extent appellant's appeal is requesting relief pursuant to Blakely, it is without merit and his judgment and sentence are affirmed.

III. APPELLANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In order to establish a claim of ineffective assistance of counsel, a movant must allege both: (1) the specific acts or omissions of counsel which fell below a standard of reasonableness under prevailing professional norms, and (2) the effect such acts or omissions had on the outcome of the case  that is, to show that the outcome likely would have been different but for counsel's performance. See Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Strickland standard has been repeatedly identified, by the Florida Supreme Court, as the appropriate standard for evaluating ineffective assistance of counsel claims. See e.g., Rogers v. State, 2007 WL 108367, *2, ___ So.2d ___, ___ (Fla.2007); Spencer v. State, 842 So.2d 52, 61 (Fla.2003).
*1174 Appellant's ineffective assistance of counsel claim is predicated upon his allegation that trial counsel was ineffective for failing to timely file the, otherwise, legally sufficient motion to disqualify Judge Smith. Such a motion to disqualify must be filed within 10 days of learning of the facts constituting the grounds for disqualification. See Fla. R. Jud. Admin. 2.160(e). Alternatively, appellant alleges that trial counsel was ineffective for failing to put on the record any explanation as to why the, otherwise, meritorious motion to disqualify was filed late.

(A) Failure to Establish Prejudice
Appellant's ineffective assistance of counsel claim must fail because he is unable to demonstrate any prejudice from the deficient performance he has alleged. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989) (noting that where it is clear that the alleged deficiency was not prejudicial, the court need not determine if the counsel's performance was deficient). In attempting to establish the prejudice prong of Strickland, appellant notes that the trial court did, in fact, sentence appellant to life imprisonment and life probation  just as the court's statement indicated it would. However, appellant has not alleged any circumstances or presented any evidence, which suggest that the aggravating factors relied upon by the court to impose this heightened sentence did not exist. Nor does appellant allege that, assuming the existence of these aggravating factors, the sentence actually imposed was not within the trial court's discretion. As noted above, under the law at the time appellant was sentenced, these were legal sentences, which any trial judge could have legally, justifiably, and reasonably imposed under the facts of this case. Accordingly, the mere fact that the trial court imposed such a sentence is not evidence of prejudice resulting from his attorney's failure to timely file the motion to disqualify.
Alternatively, appellant argues that he need not demonstrate prejudice in this case. He puts forth that counsel's failure to timely file an, otherwise, legally meritorious motion to disqualify, created a structural defect in the proceedings. Florida courts have held that "[t]rials marred by structural defects are not subject to harmless error analysis because `[t]he entire conduct of the trial from beginning to end is obviously affected . . .' by such an error." Pinardi v. State, 718 So.2d 242, 244 (Fla. 5th DCA 1998) (citing Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). The Fifth District has made it clear that a structural error occurs when a judge, who is actually biased, presides over a trial. See Pinardi, 718 So.2d at 244.
Appellant fails to establish a structural defect in this case. He argues that a structural defect was created when Judge Smith  who would have been impelled, by a timely filed motion to disqualify, to recuse himself  was permitted to preside over appellant's trial and sentencing.[3] However, as was the case in Pinardi, appellant merely alleges that Judge Smith could have been disqualified by a timely filed motion to disqualify, and does not *1175 present evidence showing that Judge Smith was actually biased in this case. Establishing the existence of facts and circumstances which could reasonably cause a litigant to fear that a judge might be biased, is not the same as establishing that the judge was actually biased.
In this case, appellant has not alleged that Judge Smith was biased because of his relationship to the parties, nor has he identified any pecuniary interest in the outcome of the proceeding. See e.g., Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); see also Goines v. State, 708 So.2d 656, 661 (Fla. 4th DCA 1998). It is true that the statements made by Judge Smith may have been sufficient to require him to recuse himself, had the motion been timely filed. However, the existence of these statements standing alone is insufficient to establish that Judge Smith was actually biased in this case. Appellant has not pointed to any action or inaction by Judge Smith, which was not entirely permissible in light of the applicable law and attendant circumstances present in this case. Had appellant been able to point to behavior by Judge Smith showing that he was actually biased (thus violating Canon 3, Florida Code of Judicial Conduct, by remaining on the case), then this Court would be required to grant appellant the relief he requests.
A "biased" judge presiding over a criminal defendant's trial only creates a structural defect when that judge is actually biased. It cannot be said that an unbiased judge, who would have been required to recuse himself by a timely filed motion to disqualify, presents the type of concerns with which the structural error rule is concerned. In light of the fact that appellant has failed to show actual bias, he has failed to demonstrate the existence of a structural defect, and is, consequently, not exempt from the requirement that he show prejudice.

(B) Strickland is Still the Standard for IAC Claims
Finally, we disagree with decisions issued by both the Second and Fourth Districts. The factual circumstances and legal issues involved in Kleppinger v. State, 884 So.2d 146 (Fla. 2d DCA 2004) and Goines v. State, 708 So.2d 656 (Fla. 4th DCA 1998), are quite similar to those of the instant case. However, here, we find ourselves unable to accept the legal conclusions reached in those cases.
In Kleppinger, the Second District held that where a defendant has alleged ineffective assistance of counsel for failing to file a motion to disqualify the trial judge, "[t]he finding of prejudice turns on whether disqualification would have been required, not on whether the outcome of a new trial would have been different." Kleppinger, 884 So.2d at 149. In so holding, Kleppinger relies upon the Fourth District's decision in Goines.[4]Goines, grounds its ruling upon its interpretation of the effect of Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), on the United States Supreme Court's decision in Strickland. For reasons which are discussed below, the decisions of the Second and Fourth Districts incorrectly construe Lockhart's effect on Strickland. As a result, these decisions effectively ignore the controlling ineffective *1176 assistance standard, which was set forth in Strickland and later adopted by the Florida Supreme Court.
In Lockhart, the defendant, Fretwell, was convicted of capital felony murder for committing murder in the course of a robbery. Fretwell alleged ineffective assistance of counsel, because his attorney failed to object, at the penalty phase of his trial. Fretwell alleged that his attorney should have objected on the grounds that Fretwell's death sentence was unconstitutional, because it was based upon an aggravating factor that duplicated an element of the felony underlying his felony murder conviction. At the time of appellant's sentencing, such an objection could have been supported by authority from the Eighth Circuit. See Collins v. Lockhart, 754 F.2d 258 (8th Cir.1985) (holding that a death sentence is unconstitutional if it is based on an aggravating factor that duplicates an element of the underlying felony, because such a factor does not genuinely narrow the class of persons eligible for the death penalty).
During the penalty phase of Fretwell's trial, the State argued that the evidence presented during the guilt phase established two aggravating factors: (1) the murder was committed for pecuniary gain, and (2) the murder was committed to facilitate respondent's escape. The jury found that the first of these two factors existed, and sentenced Fretwell to death. On direct appeal, Fretwell argued, that his sentence should be reversed in light of Collins. Specifically, Fretwell argued that because he was convicted of murder in the course of a robbery, pecuniary gain being part and parcel of the robbery offense, his death sentence was unconstitutional. Fretwell's claims were rejected by the Arkansas Supreme Court and his conviction and sentence were affirmed. See Fretwell v. State, 289 Ark. 91, 708 S.W.2d 630 (1986).
Fretwell filed a habeas petition in federal district court, and alleged that his counsel had rendered ineffective assistance, because counsel failed to make the Collins objection during sentencing. The district court granted Fretwell relief, and its decision was affirmed by the Eighth Circuit  despite the fact that the Eighth Circuit had overruled its Collins decision two years earlier. See Perry v. Lockhart, 871 F.2d 1384 (8th Cir.1989) (relying on Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), to overturn the Collins decision). In affirming the decision to grant Fretwell relief, the Eighth Circuit majority believed that the Arkansas trial court was bound, under the Supremacy Clause, to obey the Eighth Circuit's interpretation of the Federal Constitution. Therefore, the Eighth Circuit reasoned that had counsel made the objection, the trial court would have sustained the objection, and the jury would not have sentenced respondent to death. The court remanded, ordering the District Court to sentence respondent to life imprisonment without the possibility of parole. The Eighth Circuit further stated that because respondent was entitled to the benefit of Collins at the time of his original sentencing proceeding, it would only "perpetuate the prejudice caused by the original sixth amendment violation" to re-sentence him under current law. Fretwell v. Lockhart, 946 F.2d 571, 578 (8th Cir.1991).
The United States Supreme Court accepted review of Lockhart, and reversed the Eighth Circuit's decision. In doing so, the United States Supreme Court stated:
In Strickland, we identified the two components to any ineffective-assistance claim: (1) deficient performance and (2) prejudice. Under our decisions, a criminal *1177 defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S., at 687, 104 S.Ct., at 2064; see also Kimmelman v. Morrison, 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); Nix v. Whiteside, supra, 475 U.S., at 175, 106 S.Ct., at 998. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him. See [United States v.] Cronic, supra, 466 U.S. [648], at 658, 104 S.Ct. [2039], at 2046 [80 L.Ed.2d 657 (1984)].
Lockhart, 506 U.S. at 369-70, 113 S.Ct. 838 (emphasis added). The Second and Fourth Districts have improperly relied upon the emphasized language (above) to conclude that a defendant's failure to demonstrate how the outcome of the trial, or the sentence imposed, would have been different, does not preclude that defendant from obtaining relief in an ineffective assistance claim. These courts have interpreted Lockhart as altering the standard handed down in Strickland. Essentially, these courts require all ineffective assistance of counsel claims to be reviewed to determine whether "the result of the proceeding was fundamentally unfair or unreliable," even when a defendant cannot show that the result at trial or the sentence imposed would have been different.
This interpretation of Lockhart, has led the Second and Fourth Districts to rule that, as a matter of law, when a judge  who would have been forced to recuse himself by a timely filed motion to disqualify  presides over a defendant's trial and sentencing, the defendant is entitled to relief under an ineffective assistance of counsel claim, because such proceedings are fundamentally unfair or unreliable. United States Supreme Court case law, post-dating Lockhart, makes it abundantly clear that the Second and Fourth Districts' interpretation of Lockhart is manifestly incorrect.
For instance, in Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court stated that the Virginia Supreme Court had erred when it ruled that Lockhart modified the standard announced in Strickland. See Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("The Virginia Supreme Court erred in holding that our decision in Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), modified or in some way supplanted the rule set down in Strickland."). The United States Supreme Court clarified the relationship between Lockhart and Strickland by stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims, [however,]there are situations in which the overriding focus on fundamental fairness may affect the analysis." Id. After indicating that, as explained in Strickland, there are a few situations in which prejudice may be presumed, the Court went on to say that there are also situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate "prejudice." Id. at *1178 391-92, 120 S.Ct. 1495.[5]
The true intention of Lockhart was not to create relief where none would otherwise exist under Strickland. The Supreme Court specifically stated that "[c]ases such as Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), do not justify a departure from a straightforward application of Strickland when the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him." Williams, 529 U.S. at 393, 120 S.Ct. 1495. In the instant case, appellant is asserting that his counsel has interfered with a procedural or substantive right to which he is lawfully entitled (i.e., the procedural right to disqualify a trial judge with a legally sufficient and timely filed motion, or the due process right to be tried before a judge that is not actually biased). Accordingly, this Court need only look to the Strickland standard to determine if the required prejudice is present.
Lockhart's applicability is limited to circumstances where a defendant has alleged that counsel is ineffective for failing to vindicate a procedural or substantive right that does not exist (i.e., the non-existent constitutional right to not be sentenced to death, when the death sentence is based upon an aggravating factor that duplicates an element of the underlying felony). Where such an allegation is made, courts must conduct a two tiered inquiry. First, courts must determine whether the outcome likely would have been different but for counsel's performance. If the defendant can establish that the outcome likely would have been different but for counsel's performance, then courts must determine whether the actions of counsel have resulted in a proceeding that is fundamentally unfair or unreliable.[6] There is nothing about appellant's case that would bring it within the ambit of the Lockhart decision; accordingly, a straightforward application of Strickland is appropriate and mandated.

(C) The Promotion of Sandbagging
Policy concerns also support a rejection of the holdings of the Second and Fourth Districts. The rule created by the Second and Fourth Districts leads to a situation where an attorney best serves the interests of his client by not timely filing a motion to disqualify. For example, if an attorney knows  based on experience  that the judge currently presiding over his client's case is not biased and is preferable to his alternatives (i.e., the other judges of the jurisdiction), then, despite the existence of legal grounds for having the judge disqualified, the attorney would best serve his client's interests by failing to timely file such a motion. The attorney's failure to file a motion to disqualify will guarantee his client the opportunity to, if convicted, obtain a second trial  at a much later date.
As discussed above, the client will not be exposed to an actually biased judge, because judges who are actually biased will recuse themselves pursuant to the Code of *1179 Judicial Conduct. However, pursuant to the rulings of the Second and Fourth Districts, the proceeding will be deemed unjust or unreliable and the client will receive relief. When faced with such a rule of law, it could certainly be argued that timely filing a motion to disqualify the trial judge is not in the best interests of your client. Courts should refrain from adopting legal rules that promote sandbagging,[7] encourage dilatory representation, and institutionalize both as the preferred method of providing competent representation.

IV. CONCLUSION

This Court affirms the circuit court's denial of appellant's claim of ineffective assistance of counsel, because appellant has failed to make the required showing of "prejudice," as that term has been defined by Strickland and its progeny. We certify conflict with Goines and Kleppinger to the extent they interpret Lockhart as modifying or supplanting the rule set down in Strickland. A defendant does not show "prejudice," as that term has been construed by the United States Supreme Court and Florida Supreme Court, merely by showing that disqualification would have been required, had his attorney timely filed a motion to disqualify the trial judge. See Williams, 529 U.S. 362, 120 S.Ct. 1495 (2000); see also Rogers, 2007 WL 108367 at *2, ___ So.2d at ___.
AFFIRMED.
THOMAS and ROBERTS, JJ., concur.
NOTES
[1] This Court's opinion, affirming the trial court's decision to deny appellant's motion to disqualify, illustrates the fact that although Judge Smith's comments may have created a well founded fear that appellant was prejudiced, the comments did not rise to the level of showing the appellant actually suffered any prejudice.
[2] Specifically, appellant puts forth that his sentencing score sheet permitted a minimum discretionary sentence of 122.5 months and a maximum discretionary sentence of 204.2 months. Appellant contends that the trial court acted unconstitutionally when, despite the prescribed discretionary range, the trial court found that the existence of several aggravating factors warranted a deviation to life imprisonment and life probation. Appellant argues that the trial court lacked the discretion to deviate upward beyond 204.2 months, unless the jury found "beyond a reasonable doubt" that the aggravating factors existed.
[3] If the trial judge had actually been biased, then he would have certainly recused himself pursuant to the dictates of the Canon 3, Florida Code of Judicial Conduct and rule 2.160(i), Florida Rules of Judicial Administration. Appellant has made no allegation of any unethical conduct on the part of Judge Smith. Here, appellant's argument is merely that he had a reason to believe that the trial judge appeared to be biased. It goes without saying that the appearance of bias, is different from the existence of actual bias, which is checked by a judge's ethical obligation to recuse himself even if no motion to disqualify is ever filed.
[4] In Goines, the Fourth District held that a defendant claiming ineffective assistance of counsel (where grounds for filing a legally sufficient motion to disqualify existed, yet, defense counsel failed to do so), could demonstrate he was "prejudiced" by "showing that counsel's error rendered the trial fundamentally unfair" ... "because of the appearance and risk of judicial bias." 708 So.2d at 661 (emphasis added).
[5] For example, where a defendant's false testimony might have persuaded the jury to acquit him, it is not fundamentally unfair to conclude that he was not prejudiced by counsel's interference with his intended perjury. See e.g., Nix v. Whiteside, 475 U.S. 157, 175-176, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).
[6] Lockhart mandates this second tier of inquiry. However, as explained above, this inquiry does not affect the Strickland analysis. It merely serves as an additional tier of scrutiny for ensuring that defendant's do not receive a windfall to which they are not entitled under the law.
[7] Sandbagging is defined as "[a] trial lawyer's remaining cagily silent when a possible error occurs at trial, with the hope of preserving an issue for appeal if the court does not correct the problem." Black's Law Dictionary 1342 (7th ed.1999).