990 So.2d 482 (2008)
Melvin B. THOMPSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC07-489.
Supreme Court of Florida.
August 28, 2008.
*484 Nancy Daniels, Public Defender, and Phil Patterson, Assistant Public Defender, Tallahassee, FL, for Petitioner.
Bill McCollum, Attorney General, Trisha Meggs Pate, Assistant Attorney General, Bureau Chief, Christine A. Guard, and Giselle Lylen Rivera, Assistant Attorneys General, Tallahassee, FL, for Respondent.
*485 ANSTEAD, J.
This case is before the Court for review of the decision of the First District Court of Appeal in Thompson v. State (Thompson II), 949 So.2d 1169 (Fla. 1st DCA 2007). The district court certified that its decision is in direct conflict with the decisions of the Fourth District Court of Appeal in Goines v. State, 708 So.2d 656 (Fla. 4th DCA 1998), and Second District Court of Appeal in Kleppinger v. State, 884 So.2d 146 (Fla. 2d DCA 2004). Thompson II, 949 So.2d at 1179. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The question before this Court concerns the appropriate standard for determining prejudice with regard to an ineffective assistance of counsel claim based on counsel's failure to disqualify the presiding judge. We hold that the test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the proper standard for evaluating such claims, and we quash the decision of the First District in Thompson II.
Below, we review the facts of this case and the conflict in the district courts. Next, we discuss the ineffective assistance of counsel standard enunciated by the United States Supreme Court in Strickland and addressed in Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Then, we explain our reliance on the Strickland standard in evaluating a claim based on counsel's failure to disqualify the presiding judge. Finally, we apply the Strickland standard to the facts of this case.

FACTUAL AND PROCEDURAL BACKGROUND
Melvin Thompson was charged by information with sexual battery with a deadly weapon (count I), burglary of a dwelling while armed (count II), aggravated assault with a deadly weapon (count III), and false imprisonment (count IV).
Prior to trial, Thompson's attorney filed a motion to withdraw as counsel. In support of this motion, the attorney asserted that Thompson had orally threatened to physically harm counsel and his family. At a subsequent hearing on this motion Thompson's counsel stated that Thompson had threatened, if convicted, to kill defense counsel, members of counsel's family, anyone associated with his case, and then himself. Thompson himself denied counsel's assertions. The trial judge then asked counsel what charges Thompson faced, and the following exchange took place:
MR. GREENBERG [defense counsel]: In 95-2874 the offenses are sexual battery with a deadly weapon, a life felony; burglary of a dwelling while armed, a first degree punishable by life; aggravated assault with a deadly weapon, a third degree felony; and false imprisonment, a third degree felony.
THE COURT: Okay. So if convicted in that case, he will be spending the rest of his life in prison?
MR. GREENBERG: Perhaps if that's what the guidelines call for.
THE COURT: With a first degree punishable by life, I don't think we need to be worrying about the guidelines. So his threat is that when he gets out of prison, he's going to make you pay for it and kill you and kill me and Mr. Poitinger and Mr. Murrell and the families and everybody.
The trial court then denied counsel's motion to withdraw, explaining:
If there has been a threat made, the Court concludes that it was a threat that could never be carried out. If he's convicted, which was the condition of his threat, if he's convicted, he will be in *486 prison for the rest of his life and he couldn't do physical harm to you or Mr. Poitinger or Mr. Murrell or me or anyone else.
Subsequently, Thompson's counsel filed a motion to disqualify the trial judge which alleged, in part, that Thompson feared that he would not receive a fair trial because the trial judge's comments at the prior hearing "indicate the court has determined the sentence to be imposed in this case prior to trial" and "indicate the court will not be inclined to consider any mitigating circumstances if the defendant is convicted of these offenses and is predisposed to sentence the defendant to the maximum possible sentence." The trial court denied this motion as untimely because the motion was filed some fourteen days after the earlier hearing, whereas the criminal rules provide that a motion for disqualification of a trial judge must be made within ten days after the discovery of the facts constituting the grounds for disqualification.
Thereafter, Thompson's case proceeded to trial, and a jury found Thompson guilty as charged of sexual battery with a deadly weapon (count I), burglary of a dwelling with a specific finding of "while armed" and "with a person assaulted" (count II), aggravated assault with a deadly weapon (count III), and false imprisonment (count IV). A presentence investigation report was prepared in anticipation of sentencing, and it contained a sentencing scoresheet that showed a permissible sentencing range of 122.5 months to 204.2 months in state prison. However, the trial court sentenced Thompson to life imprisonment on count I and five years concurrent imprisonment on counts III and IV. The court also sentenced Thompson to life probation on count II, to run consecutively with his prison sentences.
Thompson appealed his convictions and sentences and asserted, among other claims, that trial counsel was ineffective for failing to timely file the motion for disqualification of the trial judge. However, the First District affirmed Thompson's convictions and sentences, "without prejudice to Appellant to file a timely motion for postconviction relief based upon ineffective assistance of trial counsel for failure to timely file Appellant's motion for disqualification of trial judge." Thompson v. State (Thompson I), 764 So.2d 630, 632 (Fla. 1st DCA 2000). The First District observed that the motion to disqualify the trial judge was legally and facially sufficient to require disqualification and the trial judge would have been required to disqualify himself had it been timely filed. Id. at 631. Because the record was silent as to any possible reason for counsel's tardiness and inconclusive as to any resulting prejudice, the First District determined that the issue of ineffectiveness could be best addressed in postconviction proceedings. Id. at 631-32. The district court held that any postconviction proceedings on this issue should be conducted before a different trial judge. Id. at 632.
Thompson then filed an amended motion for postconviction relief which alleged that trial counsel was ineffective for not timely filing a legally sufficient motion to disqualify the trial and sentencing judge. After holding an evidentiary hearing, the postconviction court denied Thompson's motion for postconviction relief.
When Thompson again appealed to the First District, the district court affirmed the denial of postconviction relief based upon Thompson's ineffective assistance of counsel claim. Thompson II, 949 So.2d at 1170. The First District noted its disagreement with the decisions of the Second District in Kleppinger and the Fourth District in Goines, which the First District characterized as requiring "all ineffective assistance of counsel claims to be reviewed *487 to determine whether `the result of the proceeding was fundamentally unfair or unreliable,' even when a defendant cannot show that the result at trial or the sentence imposed would have been different." Thompson II, 949 So.2d at 1177.[1]
In Goines, the Fourth District also addressed a postconviction claim based on defense counsel's failure to disqualify the presiding judge. 708 So.2d at 657. The court concluded that "in the absence of a reasonable tactical decision not to do so, it constitutes ineffective assistance not to seek disqualification on the grounds revealed in this case, which plainly show a reasonable fear of judicial bias." Id. at 660. The district court explained "that the prejudice component of Strickland is concerned with whether counsel's deficient performance `renders the result of the trial unreliable or the proceeding fundamentally unfair.'" Goines, 708 So.2d at 660 (quoting Lockhart, 506 U.S. at 372, 113 S.Ct. 838). The court rejected the State's argument that in order to demonstrate prejudice under Strickland the defendant was required to demonstrate that the outcome would have been different if counsel had secured disqualification and the proceedings were then presided over by another judge. Goines, 708 So.2d at 661. Similarly, the Second District in Kleppinger rejected an outcome-determinative standard for prejudice and held that "[t]he finding of prejudice [under Strickland] turns on whether disqualification would have been required, not on whether the outcome of a new trial would have been different." Kleppinger, 884 So.2d at 149 (citing Goines, 708 So.2d at 660).

STRICKLAND
As recognized by the United States Supreme Court, the Sixth Amendment right to counsel exists in order to protect the fundamental right to a fair trial. Strickland, 466 U.S. at 684, 104 S.Ct. 2052. A fair trial is defined as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685, 104 S.Ct. 2052. Because the purpose of the right to effective assistance of counsel is to ensure a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. 2052.
In Strickland, the United States Supreme Court established a two-prong standard for determining whether counsel provided ineffective assistance warranting postconviction relief:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a *488 defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052. In defining the prejudice prong of the standard, the Court stated that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. The Court emphasized that "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Id. at 696, 104 S.Ct. 2052. Importantly, the Court took care to explain that the prejudice component was not an outcome-determinative test and there was no requirement to show that counsel's deficiency actually altered the outcome of the case. Id. at 693, 104 S.Ct. 2052. The Court explained that while "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," a defendant did not need to "show that counsel's deficient conduct more likely than not altered the outcome in the case." Id.
In Lockhart, a case relied upon by the Fourth District in Goines, the United States Supreme Court decided the issue of whether counsel's failure to make an objection in a state capital sentencing proceeding  an objection that would have been supported by a decision which was later overruled  constituted "prejudice" within the meaning of Strickland. Lockhart, 506 U.S. at 366, 113 S.Ct. 838. The Court held that it did not constitute prejudice, "[b]ecause the result of the sentencing proceeding. . . was rendered neither unreliable nor fundamentally unfair as a result of counsel's failure to make the objection." Id. After quoting from Strickland, the Court clarified that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369, 113 S.Ct. 838. The Court subsequently explained that its holding in Lockhart denying relief did not modify or supplant the Strickland analysis. See Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); see also Williams v. Taylor, 529 U.S. 362, 393, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("Cases such as Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), and Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), do not justify a departure from a straightforward application of Strickland when the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which the law entitles him.").

ADHERENCE TO STRICKLAND

Just as the United States Supreme Court continues to apply the traditional Strickland analysis to claims of actual ineffective assistance of counsel, we, too, use Strickland as the standard for evaluating such claims. See Cottle v. State, 733 So.2d 963, 965 (Fla.1999) (describing Strickland as the primary guide for ineffective assistance claims). As we recently explained in Carratelli v. State, 961 So.2d 312 (Fla. 2007), "A defendant's claim that his counsel offered ineffective assistance at trial, for whatever reason, must be analyzed under the standard the Supreme Court enunciated in Strickland." Carratelli, 961 So.2d at 320. In that case, we addressed the standard that courts should apply in deciding whether counsel's failure to preserve a challenge to a potential juror constitutes ineffective assistance of counsel. Id. at 315. We examined and compared *489 the standards for demonstrating reversible error on appeal and demonstrating prejudice in the postconviction context. Id. at 317-20. We noted that while the standard for obtaining a reversal upon the erroneous denial of a cause challenge was relatively lenient (a defendant need only show that an objectionable juror sat on the jury), the standard for prejudice in postconviction claims was more restrictive. Id. at 320. We found that applying the standard used on direct appeal in the postconviction context disregarded the fundamental differences between review on appeal and review on postconviction. See id. at 324. Hence, we concluded that a postconviction claim must be evaluated under the more rigorous standard of Strickland. See Carratelli, 961 So.2d at 324.
Similarly, we reject Thompson's claim that a defendant is automatically entitled to postconviction relief simply by demonstrating that the denial of a motion for disqualification, if one had been properly filed by counsel, would have been reversed on appeal. Under Florida law, the legal sufficiency of a motion to disqualify depends on "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983). The legal sufficiency of a motion is purely a question of law. MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1335 (Fla. 1990). When a trial court fails to act in accord with the law governing motions to disqualify, an appellate court will vacate a trial court judgment that flows from the error. See Fuster-Escalona v. Wisotsky, 781 So.2d 1063, 1065 (Fla.2000).
In contrast to this relatively low threshold for obtaining relief on appeal, a defendant claiming ineffective assistance of trial counsel in postconviction proceedings may only obtain relief by showing that counsel's deficient performance actually prejudiced the defense. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Witt v. State, 387 So.2d 922, 925 (Fla.1980) (quoting United States v. Addonizio, 442 U.S. 178, 184 & n. 11, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). As in Carratelli, we hold that the Strickland standards for deficiency and prejudice apply to a postconviction claim predicated upon defense counsel's failure to file a timely motion to disqualify a trial judge.

APPLICATION OF THE STRICKLAND STANDARD
Having confirmed that the Strickland standard is the appropriate standard to analyze a claim of ineffective assistance of counsel based on counsel's failure to timely act to disqualify the trial judge, we now apply the standard to the facts of this case.
First, to establish the deficiency prong of Strickland, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. 466 U.S. at 687-88, 104 S.Ct. 2052. We find that counsel's failure to timely file the motion to disqualify constituted deficient performance. The First District expressly held in its initial opinion that the motion to disqualify was facially sufficient and that the judge would have been legally required to disqualify himself had the motion been timely filed. Thompson I, 764 So.2d at 631. Florida law supports the district court's previous conclusion. The Florida Rules of Judicial Administration provide for the disqualification of a judge on the ground "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice *490 or bias of the judge." Fla. R. Jud. Admin. 2.330(d)(1) (formerly Fla. R. Jud. Admin. 2.160(d)(1)). Furthermore, the legal sufficiency of a motion to disqualify depends on "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston, 441 So.2d at 1087. In particular, judicial comments revealing a determination to rule a particular way prior to hearing any evidence or argument have been found to be sufficient grounds for disqualification. See Benson v. Tharpe, 685 So.2d 1363, 1364 (Fla. 2d DCA 1996). "A trial judge's announced intention before a scheduled hearing to make a specific ruling, regardless of any evidence or argument to the contrary, is the paradigm of judicial bias and prejudice." Gonzalez v. Goldstein, 633 So.2d 1183, 1184 (Fla. 4th DCA 1994) (granting a writ of prohibition where the trial court told defense counsel before a scheduled resentencing hearing that he would not listen to any mitigation evidence and intended to resentence the defendant to the maximum period allowed under the guidelines).
The relevant rules require a motion to disqualify to be filed within ten days of learning of the facts constituting the grounds for disqualification. See Fla. R. Jud. Admin. 2.330(e) (formerly Fla. R. Jud. Admin. 2.160(e)). Here there is no dispute that the motion was filed late, beyond the time required by the rule. Furthermore, the testimony of Thompson's trial counsel at the postconviction evidentiary hearing suggests that the untimely filing was not a strategic decision. Cf. Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." (citing Rutherford v. State, 727 So.2d 216, 223 (Fla.1998); State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987))). At the postconviction evidentiary hearing, counsel testified that he had no recollection why the motion was untimely. Under these circumstances, we conclude that Thompson has demonstrated deficient performance.
Next, however, under Strickland, Thompson must also show that he was prejudiced by counsel's ineffectiveness. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052 ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."). To demonstrate prejudice, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In considering this issue, we reject the State's claim, and the First District's apparent holding, that Strickland requires a showing that the actual outcome of the proceedings would have been different but for counsel's error. Rather, we have repeatedly held, consistent with the United States Supreme Court's explanation of the prejudice standard in Strickland, that this standard requires a demonstration that the result of the proceeding has been rendered unreliable, and our confidence in the outcome of a proceeding has been undermined by counsel's deficiency. See, e.g., Barnhill v. State, 971 So.2d 106, 109-10 (Fla.2007); Philmore v. State, 937 So.2d 578, 583 (Fla. 2006); Arbelaez v. State, 898 So.2d 25, 31-32 (Fla.2005); State v. Davis, 872 So.2d 250, 253 (Fla.2004); Davis v. State, 875 So.2d 359, 365 (Fla.2003); Gudinas v. State, 816 So.2d 1095, 1101 (Fla.2002); Valle v. State, 778 So.2d 960, 965-66 (Fla. 2001); State v. Riechmann, 777 So.2d 342, *491 350 (Fla.2000).[2] We find that Thompson has demonstrated the requisite prejudice.
Thompson relies on the statements made by the judge at the hearing on counsel's motion to withdraw: "With a first degree punishable by life, I don't think we need to be worrying about the guidelines"; and "If he's convicted . . . he will be in prison for the rest of his life. . . ." He also relies on the fact that the same trial judge later imposed departure sentences of life imprisonment and life probation on counts I and II, as confirmation that the trial judge had predetermined the life sentence before hearing any evidence. We agree that the statements made by the judge in Thompson's case sufficiently evince judicial bias and predisposition so as to undermine confidence in the eventual sentence imposed. However, we reject Thompson's claim that we should also set aside his convictions, which were predicated upon a jury's determination of his guilt. While that might have been the outcome if the issue of disqualification had been properly preserved and resolved on direct appeal, we do not apply the same standard when considering a claim of ineffectiveness of counsel in postconviction proceedings. We find nothing in the record to undermine our confidence in the jury's determination of guilt.
We reach a different conclusion, however, as to the imposition of sentence by the trial judge. Except for the limited advisory role played by jurors in capital proceedings, trial judges have virtually absolute control and exclusive discretionary authority in determining a defendant's sentence under the controlling statutory guidelines. Hence, it is absolutely essential that a judge be and remain impartial prior to the commencement of sentencing proceedings when the positions of the respective parties will be presented and considered by the court. See Benson, 685 So.2d at 1364; Gonzalez, 633 So.2d at 1184. However, the statements the trial judge made here at the hearing on the motion to withdraw suggest that that the judge had a preconceived and fixed view as to what sentence Thompson would receive if he was convicted. In light of such prejudgment expressed by the trial judge at the outset of the proceedings, we conclude that counsel's failure to timely disqualify the judge rendered the result of Thompson's sentencing unreliable, and our confidence in the sentence ultimately imposed upon Thompson has been sufficiently undermined to merit relief under Strickland. Cf. Porter v. State, 723 So.2d 191, 196 (Fla.1998) (holding that the judge's impartiality did not satisfy the constitutional requirement that the sentencer of a capital defendant be impartial and not predisposed to a sentence of either life or death).

CONCLUSION
For the reasons expressed above, we quash the decision of the First District in Thompson II and remand with directions for a new sentencing proceeding. We hold that the standard enunciated by the United States Supreme Court in Strickland is the appropriate standard for determining prejudice with regard to an ineffective assistance *492 of counsel claim based on counsel's failure to disqualify the presiding judge. We approve of the decisions of the Second District in Kleppinger and the Fourth District in Goines to the extent that they are consistent with this opinion.
It is so ordered.
QUINCE, C.J., and PARIENTE, and LEWIS, JJ., concur.
BELL, J., concurs in part and dissents in part with an opinion, in which CANTERO, J., concurs.
WELLS, J., recused.
BELL, J., concurring in part and dissenting in part.
I agree with the majority that the test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the proper standard for evaluating ineffective assistance of counsel claims alleging that counsel failed to timely file a motion to disqualify the presiding judge. I also agree that it is the defendant who bears the burden of proving prejudice under Strickland. However, unlike the majority, I believe that Thompson has failed to meet that burden as to both the determination of guilt and the sentence imposed.
In particular, I disagree with the majority's prejudice analysis regarding the sentence imposed by Judge Smith. What the majority fails to acknowledge is that there are two reasonable but conflicting interpretations of Judge Smith's remarks. As found by the experienced postconviction trial judge, one interpretation is that Judge Smith's remarks were simply a reflection of an erroneous belief that the sentencing guidelines would not apply if Thompson was convicted as charged. The second interpretation is the majority's view on postconviction appeal, namely that Judge Smith's remarks "suggest that the judge had a preconceived and fixed view as to what sentence Thompson would receive if he was convicted." Majority op. at 491.
The majority's decision to ignore the first possible interpretation would be the correct one if this matter was before us on direct appeal or as a petition seeking an extraordinary writ to prohibit Judge Smith from presiding. See Livingston v. State, 441 So.2d 1083 (Fla.1983); Benson v. Tharpe, 685 So.2d 1363 (Fla. 2d DCA 1996); Gonzalez v. Goldstein, 633 So.2d 1183 (Fla. 4th DCA 1994). In such a posture, we would review whether Judge Smith's remarks mandated that he grant a motion to disqualify, which depends upon "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston, 441 So.2d at 1087. Obviously, however, Thompson is not before us on direct appeal or seeking extraordinary relief to remove Judge Smith from his case. Instead, he is here appealing the denial of his postconviction claim alleging ineffectiveness of his trial counsel. And as the majority acknowledges, "[i]n contrast to [the] relatively low threshold for obtaining relief on appeal, a defendant claiming ineffective assistance of trial counsel in postconviction proceedings may only obtain relief by showing that counsel's deficient performance actually prejudiced the defense." Majority op. at 489 (emphasis added). However, despite this acknowledgment, the majority inexplicably (1) fails to apply the more stringent set of rules and principles that apply in postconviction proceedings and (2) fails to require proof of actual prejudice. The proper application of these postconviction standards dictates that we affirm the postconviction trial judge's interpretation of Judge Smith's remarks and deny relief because Thompson has failed to prove actual bias.
*493 In Florida, we assume that jurors and trial judges are unbiased. See Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984) (affirming denial of challenge to juror where the defendant "presented no evidence that prospective juror Williams would not have rendered his verdict solely upon the evidence presented"); Enter. Leasing Co. v. Jones, 789 So.2d 964, 967-68 (Fla.2001) (rejecting rule that presumes bias whenever judge is privy to confidential information). Given this assumption, when raising a postconviction claim that counsel was ineffective for failing to strike a juror for cause, we require the defendant to prove that the juror was actually biased in order to establish prejudice under Strickland. Carratelli v. State, 961 So.2d 312, 324 (Fla. 2007). If we require the defendant to demonstrate the actual bias of a juror, we must surely require a defendant to prove that a presiding judge was actually biased in order to establish prejudice under Strickland.
As stated earlier, Thompson has not met his burden of proving actual bias. During the evidentiary hearing on his postconviction motion, Thompson did not call Judge Smith to explore what Judge Smith was thinking when he made the statements in question. And, there is no evidence in the record demonstrating that Judge Smith was unavailable to provide such testimony. Moreover, as the First District noted, Thompson did not present any evidence suggesting that the aggravating factors relied upon by Judge Smith in imposing the departure sentence did not exist or that the sentence imposed was not within Judge Smith's discretion. See Thompson v. State, 949 So.2d 1169, 1174 (Fla. 1st DCA 2007). Instead, during the postconviction proceeding, Thompson merely argued that the imposition of a life sentence itself demonstrated prejudice. Given the heinous nature of Thompson's crime, this life sentence is certainly not enough to prove that Judge Smith actually held a biased and predetermined view of sentencing.
To the contrary, after conducting an evidentiary hearing and reviewing the record, an experienced trial judge expressly found that Judge Smith's remarks were solely a reflection of an erroneous belief that the sentencing guidelines would not apply if Thompson was convicted of a first-degree felony punishable by life. As the trial court's order explained,
Judge Smith responded to this crisis of representation created by Defendant. He reasoned that Mr. Greenberg, nor others, should have anything to fear because Defendant would be in prison for life if convicted. The context of Judge Smith's remarks appear to be a mistaken belief that the guidelines did not impact on a first degree felony punishable by life. The context of the statement of this belief was always tied to the threats Defendant made. Judge Smith: "Okay. So if convicted in that case, he will be spending the rest of his life in prison?" Mr. Greenberg: "Perhaps if that's what the guidelines call for." Judge Smith: "With a first degree punishable by life, I don't think we need to be worrying about the guidelines. So his threat is that when he gets out of prison, he's going to make you pay for it and kill you and kill me and Mr. Poitinger and Mr. Murrell and the families and everybody."
In ruling on the Motion to Withdraw, the context implies Defendant, if not convicted, is not a threat because he will not have been convicted. If convicted, the Judge reasons Defendant cannot physically hurt anyone because he will be in prison for life.
The trial court's finding that Judge Smith's statements did not reflect bias or a *494 predetermination as to sentencing is not contradicted by any evidence in the record. Judge Smith's remarks were directly linked to denying Mr. Greenberg's motion to withdraw. And, after the hearing on the motion to withdraw, Judge Smith never made a single comment that could even arguably be considered a manifestation of bias regarding sentencing. Then, during the sentencing hearing, Judge Smith again never indicated anything but a willingness to listen to the defense's arguments and witnesses. At the sentencing hearing and in writing thereafter, Judge Smith explained his reasons for departing from the sentencing guidelines. His explanation does not reflect any bias or predisposition. Thus, the trial court's finding regarding the context of Judge Smith's comments is clearly reasonable. There is absolutely nothing in the record that contradicts the trial court's finding.
Given Thompson's failure to satisfy his postconviction burden of proving actual bias, I would affirm the postconviction trial court's reasonable interpretation of Judge Smith's remarks and deny relief. Accordingly, I concur in part and dissent in part.
CANTERO, J., concurs.
NOTES
[1] In addition to the certified conflict issue, Thompson claims that the departure sentences he received are illegal and unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We decline to address this claim as it is beyond the scope of the conflict issue. Cf. Battle v. State, 911 So.2d 85, 87 n. 1 (Fla.2005).
[2] Where the defendant has demonstrated that counsel's deficiency undermined confidence in the outcome, we have found that the defendant has shown the necessary prejudice. See, e.g., Davis, 872 So.2d at 257 ("For all of these reasons, counsel's overt admissions of racial prejudice compromised his representation to such an extent that it has undermined our confidence in the guilty verdicts. Thus, we conclude that Davis has also met the standard for prejudice, in that because of counsel's deficient performance, `the trial cannot be relied on as having produced a just result.'" (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052)).